| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | Jordan | R | Pearce |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Albert | C | Pearce |
| (Spouse, if filing) First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Eastern District of Pennsylvania

Case number: 24-14494-amc
(If known)

# Official Form 427
## Cover Sheet for Reaffirmation Agreement                                     12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

1. **Who is the creditor?**   University Federal Credit Union
   Name of the creditor

2. **How much is the debt?**
   On the date that the bankruptcy case is filed  $ 6,133.25
   To be paid under the reaffirmation agreement  $ 5,256.85
   $ 313.99 per month for 18 months (if fixed interest rate)

3. **What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
   Before the bankruptcy case was filed   2.95 %
   Under the reaffirmation agreement   2.95 %  ☑ Fixed rate
                                              ☐ Adjustable rate

4. **Does collateral secure the debt?**
   ☐ No
   ☑ Yes. Describe the collateral.   2018 Mazda CX5
   Current market value  $ 11,488.00

5. **Does the creditor assert that the debt is nondischargeable?**
   ☑ No
   ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

6. **Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

   **Income and expenses reported on Schedules I and J**

   6a. Combined monthly income from line 12 of Schedule I   $ 2,743.71

   6b. Monthly expenses from line 22c of Schedule J   $ 4,853.00

   6c. Monthly payments on all reaffirmed debts not listed on Schedule J   – $ _____

   6d. **Scheduled net monthly income**   $ _____
       Subtract lines 6b and 6c from 6a.
       If the total is less than 0, put the number in brackets.

   **Income and expenses stated on the reaffirmation agreement**

   6e. Monthly income from all sources after payroll deductions   $ _____ *

   6f. Monthly expenses   – $ _____ *

   6g. Monthly payments on all reaffirmed debts not included in monthly expenses   – $ _____ *

   6h. **Present net monthly income**   $ _____ *
       Subtract lines 6f and 6g from 6e.
       If the total is less than 0, put the number in brackets.

\* creditor is a credit union

Official Form 427                                Cover Sheet for Reaffirmation Agreement                                page 1

Debtor 1  **Jordan  R  Pearce**
      First Name   Middle Name   Last Name

Case number (if known) **24-14494-amc**

7. **Are the income amounts on lines 6a and 6e different?**
   ☐ No
   ☐ Yes. Explain why they are different and complete line 10. _____

8. **Are the expense amounts on lines 6b and 6f different?**
   ☐ No
   ☐ Yes. Explain why they are different and complete line 10. _____

9. **Is the net monthly income in line 6h less than 0?**
   ☐ No
   ☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).
   Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.

10. **Debtor's certification about lines 7-9**

    If any answer on lines 7-9 is Yes, the debtor must sign here.

    If all the answers on lines 7-9 are No, go to line 11.

    I certify that each explanation on lines 7-9 is true and correct.

    x _/s/ Jordan Pearce_           x _/s/ Albt C Per_
    Signature of Debtor 1            Signature of Debtor 2 (Spouse Only in a Joint Case)

11. **Did an attorney represent the debtor in negotiating the reaffirmation agreement?**
    ☐ No
    ☐ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
        ☐ No
        ☐ Yes

---

### Part 2: Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

x _/s/ Richard Hickok_                     Date  **3/7/25**
Signature                                        MM / DD / YYYY

**Richard Hickok**
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

---

Official Form 427        **Cover Sheet for Reaffirmation Agreement**        page 2

Form 2400A (12/15)

> Check one.
> ☐ **Presumption of Undue Hardship**
> ☑ **No Presumption of Undue Hardship**
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
### Eastern District of Pennsylvania

In re **Jordan R Pearce**, 
     *Debtor*

Case No. **24-14494-amc**

Chapter **7**

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** University Federal Credit Union

☑ Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: **Auto loan**
     *For example, auto loan*

B. **AMOUNT REAFFIRMED:**     $ **5,256.85**

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before _____, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The **ANNUAL PERCENTAGE RATE** applicable to the Amount Reaffirmed is **2.9500** %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☑ Fixed rate     ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form 2400A, Reaffirmation Documents                                                                 Page 2

D. **Reaffirmation Agreement Repayment Terms** *(check and complete one)*:

- [✓] $ 313.99 per month for 18 months starting on 02/22/2025.

- [ ] Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

    Description:                2018 Mazda CX5
    Current Market Value    $            11,488.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

- [ ] Yes. What was the purchase price for the collateral?     $ _____
- [✓] No. What was the amount of the original loan?     $    17,428.52

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|   | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 6,133.25 | $ 5,256.85 |
| Annual Percentage Rate | 2.9500 % | 2.9500 % |
| Monthly Payment | $ 313.99 | $ 313.99 |

H. [ ] Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.    DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

    Check one.    [✓] Yes    [ ] No

B. Is the creditor a credit union?

    Check one.    [✓] Yes    [ ] No

Form 2400A, Reaffirmation Documents                                                                Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

   1. Your present monthly income and expenses are:

      a. Monthly income from all sources after payroll deductions
      (take-home pay plus any other income)                                    $_____

      b. Monthly expenses (including all reaffirmed debts except
      this one)                                                                $_____

      c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $_____

      d. Amount of monthly payment required for this reaffirmed debt           $_____

      *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

   2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

      Check one of the two statements below, if applicable:

      ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

      ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:




      Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

      ☑ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Form 2400A, Reaffirmation Documents                                                                 Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 2/28/25    Signature _____
                                    Debtor
Date 2/28/25    Signature _____
                                    Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  University Federal Credit Union        P.O. Box 9350  Austin, TX 78766
              Print Name                                    Address

Richard Hickok                          _____    3/7/25
Print Name of Representative                Signature            Date


## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 3/6/2025  Signature of Debtor's Attorney _____
               Print Name of Debtor's Attorney  Michael J Assad

Form 2400A, Reaffirmation Documents                                                                                    Page 5

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

       i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

       ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

**B. INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form 2400B to do this.*

Form 2400A, Reaffirmation Documents                                                                                              Page 7

## C. DEFINITIONS

1.  **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.  **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.  **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# COMMONWEALTH OF PENNSYLVANIA
## CERTIFICATE OF TITLE FOR A VEHICLE

1,707  FUEL: GAS

2429799990141148-001

| JM3KFADM4J1412967 | 2018 | MAZDA | 84460120501 PE |
|---|---|---|---|
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |

| SW | 0 | | TX | 3/18/22 | 053938 | 0 |
|---|---|---|---|---|---|---|
| BODY TYPE | DUP | SEAT CAP | PRIOR TITLE STATE | ODOM. PROCD. DATE | ODOM. MILES | ODOM. STATUS |

| 3/18/22 | 3/18/22 | | | | |
|---|---|---|---|---|---|
| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |

**ODOMETER STATUS**
0 = ACTUAL MILEAGE
1 = MILEAGE EXCEEDS THE MECHANICAL LIMITS
2 = NOT THE ACTUAL MILEAGE
3 = NOT THE ACTUAL MILEAGE-ODOMETER TAMPERING VERIFIED
4 = EXEMPT FROM ODOMETER DISCLOSURE

**TITLE BRANDS**
A = ANTIQUE VEHICLE
C = CLASSIC VEHICLE
D = COLLECTIBLE VEHICLE
F = OUT OF COUNTRY
G = ORIGINALLY MFGD. FOR NON-U.S. DISTRIBUTION
H = AGRICULTURAL VEHICLE
L = LOGGING VEHICLE
P = IS/WAS A POLICE VEHICLE
R = RECONSTRUCTED
S = STREET ROD
T = RECOVERED THEFT VEHICLE
V = VEHICLE CONTAINS REISSUED VIN
W = FLOOD VEHICLE
X = IS/WAS A TAXI

JOINT OWNERSHIP WITH RIGHTS OF SURVIVORSHIP
REGISTERED OWNER(S)

JORDAN ROY PEARCE &
ALBERT CHRISTOPHER
PEARCE
425 S BROAD ST 2F
PHILADELPHIA PA 19147

FIRST LIEN FAVOR OF:

UNIVERSITY FEDERAL
CREDIT UNION

SECOND LIEN FAVOR OF:

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward this Certificate of Title to the Bureau of Motor Vehicles with the appropriate form and fee.

FIRST LIEN RELEASED _____ DATE

BY _____ AUTHORIZED REPRESENTATIVE

SECOND LIEN RELEASED _____ DATE

BY _____ AUTHORIZED REPRESENTATIVE

MAILING ADDRESS

UNIVERSITY FEDERAL
CREDIT UNION
3305 STECK AVE
AUSTIN TX 78757



**pennsylvania**
DEPARTMENT OF TRANSPORTATION

I certify as of the date of issue, the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the lawful owner of the said vehicle.

MICHAEL B. CARROLL
Secretary of Transportation

**D. APPLICATION FOR TITLE AND LIEN INFORMATION**

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED

SUBSCRIBED AND SWORN TO BEFORE ME:
MO. DAY YEAR

SIGNATURE OF PERSON ADMINISTERING OATH

STAMP OR SEAL

The undersigned hereby makes application for Certificate of Title to the vehicle described above, subject to the encumbrances and other legal claims set forth here

SIGNATURE OF APPLICANT OR AUTHORIZED SIGNER

SIGNATURE OF CO-APPLICANT/TITLE OF AUTHORIZED SIGNER

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (on death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (on death of one owner, interest of deceased owner goes to his/her heirs or estate).

IF NO LIEN, CHECK ☐   IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO ☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER:

1ST LIENHOLDER NAME

STREET

CITY  STATE  ZIP

IF NO 2ND LIEN, CHECK ☐ IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO ☐

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER:

2ND LIENHOLDER NAME

STREET

CITY  STATE  ZIP

STORE IN A SAFE PLACE - IF LOST APPLY FOR A DUPLICATE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

**University Federal Credit Union**
PO BOX 9350, Austin, Texas 78766
512-467-8080 or 800-252-8311
www.ufcu.org

**CLOSED-END NOTE, DISCLOSURE, LOAN AND SECURITY AGREEMENT**

| BORROWER'S NAME AND ADDRESS | 13021 LEGENDARY DR APT 715 | DATE OF LOAN | LOAN MATURITY DATE |
|---|---|---|---|
| JORDAN ROY PEARCE | AUSTIN, TX 78727-3962 | 5/6/2021 | 6/22/2026 |
| CO-BORROWER'S NAME AND ADDRESS | 13021 LEGENDARY DR APT 715 | APPLICATION NUMBER | BORROWER'S ACCOUNT NUMBER |
| ALBERT C PEARCE | AUSTIN, TX 78727-3962 | ▮ | ▮ |

| ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate. | FINANCE CHARGE: The dollar amount the credit will cost you. | Amount Financed: The amount of credit provided to you or on your behalf. | Total of Payments: The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 2.95% | $1,410.52 | $17,428.52 | $18,839.04 |

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | |
|---|---|---|---|
| 59 | $313.99 | 7/22/2021 | Monthly |
| 1 | $313.63 | 6/22/2026 | |

**Security:** You are giving a security interest in your shares and deposits in the credit union, as well as the collateral described below. Collateral for other loans with us will also secure this loan, except for your home and household goods.

**Late Charges:** If your payment is more than 7 days late, you will be charged the greater of 25.00% of the interest due or $5.00.

**Required Deposit Balance:** The Annual Percentage Rate does not take into account your required deposit balance.

**Filing Fees:** $0.00

**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the Credit Union. If you do not obtain property insurance we will obtain it at your cost.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

"e" means estimate.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Returned Payment Fee:** We will charge you $30.00 if your payment is returned unpaid for any reason.

**ITEMIZATION OF AMOUNT FINANCED**

| ITEMIZATION OF AMOUNT FINANCED OF | AMOUNT GIVEN TO YOU DIRECTLY | AMOUNT PAID ON YOUR ACCOUNT | PREPAID FINANCE CHARGE |
|---|---|---|---|
| $17,428.52 | $0.00 | $0.00 | $ N/A |

Amount Paid to Others on Your Behalf (Describe)

| | To GAP To: | (a portion will be retained by us) | To |
|---|---|---|---|
| | To MBP To: | (a portion will be retained by us) | To |
| $17,428.52 | To CARMAX | | To |
| $0.00 | To County Title Fee | | To |
| | To | | To |
| | To | | To |

**SECURITY INFORMATION**

| SHARES PLEDGED: | ACCOUNT NUMBER | AMOUNT | ACCOUNT NUMBER | AMOUNT $ |
|---|---|---|---|---|

| MOTOR VEHICLE: | YEAR 2018 | MAKE Mazda | MODEL CX5 | BODY TYPE | SERIAL or VIN NUMBER JM3KFADM4J1412967 | AMOUNT OF LIEN (TOTAL OF PAYMENTS) $ 18,839.04 |
|---|---|---|---|---|---|---|

| OTHER COLLATERAL: | | AMOUNT OF LIEN (TOTAL OF PAYMENTS) $ |
|---|---|---|
| | | AMOUNT OF LIEN (TOTAL OF PAYMENTS) $ |

**THIS DOCUMENT OR A COPY OF THIS DOCUMENT MAY BE FILED AS A FINANCING STATEMENT.**

| BORROWER'S NAME | APPLICATION NUMBER | DATE OF LOAN |
|---|---|---|
| JORDAN ROY PEARCE | | 5/6/2021 |

## LOAN SIGNATURES

You agree that the terms and conditions in the disclosure statement and the loan and security agreements attached hereto shall apply to this loan. If there is more than one borrower, you agree that all the conditions of the loan and security agreements governing this loan shall apply to both jointly and severally. You acknowledge that you have received a copy of the loan and security agreements and disclosure statement ("Note"). If you purchase optional loan products in connection with this loan, you understand that a portion of the premium or fee you pay will be retained by the credit union (or paid back to the credit union by the service provider) as compensation for making these services available to you. You also acknowledge receipt of the product application(s), disclosures, and contract(s) regarding the product(s).

**Suspension of electronic services and access to share or deposit accounts.** Subject to applicable law, we may suspend some or all electronic services and access to your checking or other account(s) if you become delinquent on any of your loan or deposit obligations to us or you cause a loss to us. We shall not be liable to you in any regard in connection with such suspension of services.

**Negative Information Notice: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

NOTICE TO CONSUMER: THIS IS A CONSUMER CREDIT TRANSACTION. (A) DO NOT SIGN ANYTHING BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (B) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (C) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT.

THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| BORROWER'S SIGNATURE | DATE | CO-BORROWER ☐ *OTHER OWNER ☐ **CO-SIGNER | DATE |
|---|---|---|---|
| x JORDAN ROY PEARCE | May 6, 2021 | x ALBERT C PEARCE | May 6, 2021 |
| ☐ CO-BORROWER ☐ *OTHER OWNER ☐ **CO-SIGNER | DATE | ☐ CO-BORROWER ☐ *OTHER OWNER ☐ **CO-SIGNER | DATE |
| X | | X | |

*OTHER OWNER: Any person who has a property interest (other than as a renter or lessor) in the above described collateral signs here. The other owner, unless also a co-borrower, is not obligated to pay the debt, but understands that the credit union has a security interest in the collateral as explained in the Security Agreement.
**CO-SIGNER: Upon default, the credit union may seek immediate payment from the co-signer of any and all sums due on the loan, including all reasonable costs and fees provided under the loan and security agreements, as permitted by law. The co-signer waives all notice to which he or she would otherwise be entitled by law.

## SPOUSAL CONSENT *(Applies to Louisiana residents only)*

(Complete only if the Security Agreement applies to non-purchase-money household goods and one spouse has applied for individual credit):

_____ (name), Borrower's spouse ("Spouse"), consents to and concurs with the granting of a security interest in the community-owned property described above. Spouse also waives any homestead or other exemptions from seizure with regard to the security property, to the extent allowed by Louisiana law. By signing this Consent, Spouse does not create any liability with regard to Spouse's separate property.

X _____
Signature of Spouse                              Date

☐ CONSUMER'S CLAIMS AND DEFENSES NOTICE - IF CHECKED, SEE NOTICE BELOW

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

### IMPORTANT DISCLOSURES FOR ACTIVE MEMBERS OF THE MILITARY AND THEIR DEPENDENTS:

The following applies if at the time of this loan you are a member of the military or a dependent (as those terms are defined in the Military Lending Act, 10 U.S.C. 987 and its implementing regulations), and: (a) your loan is unsecured or secured by personal property or a vehicle that you did not purchase with the proceeds of the loan; or (b) this loan is made for the purchase of a vehicle or personal property, and you also receive additional "cash out" financing (e.g., to pay off negative equity on a trade-in or you otherwise receive additional cash).

1. **NOTICE:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums or debt protection fees; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).

2. This loan will not be secured by a consensual lien on shares or deposits in any of your accounts unless you specifically agree to establish an account in connection with this loan ("Secured Account"). Only funds deposited into the Secured Account after the loan is made will secure this loan. Any cross-collateralization provision contained in your loan or membership documents will not apply to the Secured Account or your other share or deposit accounts for any loan subject to the Military Lending Act.
   However, with regard to this loan, we still reserve our statutory lien rights and any resulting rights to set-off or administrative freeze under federal or state law, which gives us the right to apply the sums in the Secured Account or any other account(s) you have with us to satisfy your obligations under this loan.
   Any contract terms in your loan, security, or membership agreements that contradict the above with regard to this loan are hereby deleted.

3. This loan is not subject to mandatory arbitration and therefore any reference to mandatory arbitration in this Loan Agreement and Security Agreement shall not apply to this loan.

4. If you are a Louisiana resident, the Louisiana-specific provisions contained in the Security Agreement do not apply to this loan.

IN THESE AGREEMENTS, THE WORDS "YOU," "YOUR" AND "YOURS" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "WE," "US" AND "OUR" MEAN THE CREDIT UNION.

**State Notices:**

*NOTICES TO WISCONSIN BORROWERS:* No provision of a marital property agreement, a unilateral agreement under Wis. Stat. Section 766.59, or a court decree under Wis. Stat. 766.70 adversely affects the interest of the Credit Union unless prior to the time the credit is extended, the Credit Union is furnished with a copy of the agreement or statement, or has actual knowledge of the adverse provision when the obligation to the Credit Union is incurred.

*NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, THE BORROWER MAY HAVE TO PAY THE DIFFERENCE.*

*NOTICE TO UTAH BORROWERS:* This written agreement is a final expression of the agreement between you and the Credit Union. This written agreement may not be contradicted by evidence of any oral agreement.

*NOTICE FOR ARIZONA OWNERS OF PROPERTY:* It is unlawful for a borrower to fail to return a motor vehicle that is subject to a security interest within thirty days after you have received notice of default. The notice will be mailed to the address you provided on this document unless you have given the Credit Union a new address. It is your responsibility to notify the Credit Union if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

*NOTICE FOR COSIGNERS IN ARIZONA:*

**Marital Community Property Joinder:** If you are a married Arizona resident signing documents in connection with this loan as a cosigner, your signature confirms that this loan obligation is being incurred in the interest of your marriage or family and that you will promptly notify your spouse and cause your spouse to consent to your and your spouse's marital property being bound by your loan obligations in accordance with Ariz. Rev. Stat. § 25-214 or other applicable law. You agree that the lender may delay disbursing your loan until the lender has received your spouses consent in a form reasonably acceptable to the lender. You further affirm that no provision of any marital property agreement or court decree adversely affects your or lenders interest in this loan obligation.

*NOTICE TO CALIFORNIA RESIDENTS:* By signing this Note, **you specifically agree that the Credit Union may access the records of the California Department of Motor Vehicles from time to time to obtain your current mailing address**, and by so agreeing, you are specifically waiving your rights under sections 1808.21 and 1808.22 of the California Vehicle Code.

*NOTICE TO TEXAS BORROWERS - INSURANCE REQUIRED:* You are required to: (i) keep the collateral insured against damage in the amount of the loan or another amount if we so specify; (ii) purchase this insurance from an insurer that is authorized to do business in the State of Texas or an eligible surplus lines insurer; and (iii) name us as the person to be paid under the policy in the event of a loss. You must also provide us a copy of the policy and proof of the payment of premiums if we so request. If you fail to meet any of these requirements, we may obtain collateral protection insurance on your behalf at your expense.

**For Missouri Residents: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

**For Vermont Residents:** *NOTICE TO CO-BORROWER: YOUR SIGNATURE ON THIS LOAN MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THE LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.*

*OHIO RESIDENTS ONLY:* The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

*WASHINGTON AND OREGON RESIDENTS ONLY:*

WARNING: UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPER COVERAGE ELSEWHERE. YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE. THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY WASHINGTON'S OR OREGON'S MANDATORY LIABILITY INSURANCE LAWS.

| BORROWER'S NAME | APPLICATION NUMBER | DATE OF LOAN |
|---|---|---|
| JORDAN ROY PEARCE | ■■■ | 5/6/2021 |

IN THESE AGREEMENTS, THE WORDS "YOU," "YOUR" AND "YOURS" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "WE," "US" AND "OUR" MEAN THE CREDIT UNION.

## LOAN AGREEMENT

**Payments/Finance Charges:** For value received, you promise to pay, at our office, all amounts due. All payments shall be made pursuant to the disclosure statement on page 1 of this document. You understand that the finance charge and total of payments shown on page 1 of this document are based on the assumption that all installment payments will be made on the scheduled due dates. If you fail to pay any installment by the time it is due, you will pay additional interest on the overdue amount and your loan may not be paid in full at the end of the term. In such case, any remaining balance will be due in full immediately.

**Skip Payment:** If we make a skip payment option available based on your eligibility, you may skip making your payment(s) for certain month(s). If you choose this option, interest will continue to accrue, but no late payment charges will be imposed during the skip period. All credit terms applicable immediately prior to the skip period will again apply once the skip period has expired.

**Allocation of Payments and Additional Payments:** Payments and credits shall be applied in the following order: any amounts past due; any fees or charges owing, including any fees or premiums for additional products purchased; accrued interest or finance charges; outstanding principal. Payments made in addition to regularly scheduled payments shall be applied in the same order.

**Late Charges:** If you make a late payment, you agree to pay a late charge if one is disclosed on page 1 of this document.

**Borrower Responsibility:** You promise to notify us of any change in your name, address or employment. You promise not to apply for a loan if you know there is a reasonable probability that you will be unable to repay your obligation according to the terms of the credit extension. You promise to inform us of any new information which relates to your ability to repay your obligation. You promise not to submit false or inaccurate information or willfully conceal information regarding your creditworthiness, credit standing, or credit capacity.

**Perfection of Security Interest; Increase in Rate; Fee; Default:** Subject to applicable law, if you fail to perfect our lien, we may consider you to be in default and can take any or all of the following actions: (a) we may take the necessary steps to perfect the lien and charge you a filing fee. This fee will be in the amount charged by the state and will be added to your loan balance. If we are unable to perfect our lien on the collateral pledged for any loan, or the value of the collateral deteriorates significantly, that loan may be treated as a signature loan for the purpose of determining the Interest Rate, and the Interest Rate shall increase to the highest signature loan rate in effect at that time. Your minimum monthly payment may also increase accordingly. (b) We may also call the loan immediately due and payable (subject to any notice of cure requirements under applicable law), in which case you must pay the entire amount due in one lump sum. Once this occurs, if the loan is not paid in full, the loan will bear interest at the highest rate allowed by law.

**Default:** *The following provision applies to borrowers in Idaho, Kansas, and Maine:* You will be in default if (1) you do not make a payment of the required amount when due; or (2) we believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.

*The following provision applies to borrowers subject to the Wisconsin Consumer Act:* You shall be in default under this Agreement if any of the following occur: (a) If an amount exceeding one (1) full payment due under this Agreement is more than ten (10) days late or if the first or last payment due under this Agreement is more than forty (40) days late; OR (b) you breach any term or condition of this Agreement, which breach materially impairs your ability to pay amounts when due or materially impairs the condition, value, or protection of our rights to or in any collateral securing this transaction.

*The following provision applies to all other borrowers:* You shall be considered in default if any of the following occur: (1) If you break any promise made under this Loan Agreement or under the Security Agreement; or (2) if you do not use the money we loaned you for the purpose stated in your application; or (3) if we should, in good faith, believe that prospect of payment, performance or realization of the collateral, if any, is impaired; or (4) if you die; or (5) if you file a petition in bankruptcy, insolvency, or receivership or are put involuntarily into such proceedings; or (6) if the collateral, if any, given as security for this loan is lost, damaged or destroyed, or if it is levied against, attached, garnished, or seized for any reason under any authority; or (7) if you do not pay on time any of your current or future debts to us; or (8) if anyone is in default of any security agreement given in connection with any loan under this Note; or (9) If you make any false or misleading statements in any credit application or update of credit information; or (10) you are in default of any other loan or security agreement you have with the Credit Union; or (11) you use the Note for any illegal purpose or transaction as determined by applicable law. If you default, we may, at our option, declare this loan immediately due and payable, and you must immediately pay to us at that time the total unpaid balance, as well as the **Finance Charge** to date, any late charges and costs of collection permitted under law, including reasonable attorney's fees.

**Actions Upon Default:** If applicable state law requires a notice of default and an opportunity to cure that default, we will grant you those rights before we exercise our remedies. If you default, upon the expiration of any applicable rights to cure that default, we may declare all amounts immediately due and payable, and you must immediately pay us the total unpaid balance (as well as interest charges to date, if allowed by applicable law), any late charges, and all collection costs permitted under law. The principal balance in default shall bear interest at the contract rate, or a default rate if one has been disclosed to you, or another rate if required by applicable law.

**Costs of Collection:** You shall pay all costs incurred by us in collecting any amount you owe or in enforcing or protecting our rights. Costs of collection include, but are not limited to, collection agency fees, repossession fees, appraisals, environmental site assessments, and casualty insurance. *The following applies to all borrowers except Wisconsin borrowers:* Costs of collection also include reasonable attorney's fees for any action taken by any attorney as allowed by applicable law in order to collect this loan or preserve or protect our rights and remedies, including, without limitation, pre-suit demands for payment, pre-suit mediation or settlement negotiations, investigation and assessment of our rights, participation in bankruptcy cases, matters, and proceedings (including, without limitation, filing proofs of claim, pursuing reaffirmation agreements, attending meetings of creditors, and pursuing complaints, motions, and objections that relate in any way to the credit union's collateral or right to payment), collateral disposition, non-bankruptcy suits and/or administrative actions, and appeals. *For Alabama borrowers:* attorney's fees after default shall not exceed 15% of the unpaid debt, or such higher amount as a court may allow. *For Georgia borrowers:* attorney's fees shall not exceed 15% of principal and accrued interest, or such higher amount as a court may allow. *For Wisconsin borrowers:* We may collect only those costs and fees allowed by the Wisconsin Consumer Act, other applicable Wisconsin law, or by a court of competent jurisdiction.

**Delay in Enforcement:** We may delay enforcing any of our rights under this agreement without losing them.

**Irregular Payments:** We may accept late payments or partial payments, even though marked "payment in full," without losing any of our rights under this agreement.

**Co-borrowers:** If you are signing this agreement as a co-borrower, you agree to be equally responsible with the borrower, but we may sue either or both of you. We do not have to notify you that this agreement has not been paid. We may extend the terms of payment and release any security without notifying or releasing you from responsibility on this agreement.

**Governing Law:** These agreements shall be construed and enforced in accordance with the laws of the State of Texas. *If you have entered into a mandatory arbitration agreement in connection with this loan:* if any provisions within this Agreement pertaining to jurisdiction and venue are inconsistent with the arbitration agreement, the arbitration agreement will govern.

**Change in Terms:** The terms of this Closed-end Note, Disclosure, Loan & Security Agreement, including any fees disclosed, are subject to change without prior notice, subject to applicable law.

---

**Contractual Pledge of Shares: You pledge all your shares and deposits in the credit union, including future additions, as security for this loan. In case you default, we may apply these shares and deposits to the payment of all sums due at the time of default, including costs of collection and reasonable attorney's fees as permitted by applicable law. No lien or right to impress a lien on shares and deposits shall apply to any of your shares which may be held in an "Individual Retirement Account" or "Keogh Plan."**

IN THESE AGREEMENTS, THE WORDS "YOU," "YOUR" AND "YOURS" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "WE," "US" AND "OUR" MEAN THE CREDIT UNION.

## SECURITY AGREEMENT

**Security Interest; PLEDGE OF SHARES; Statutory Lien; Set-off; Administrative Freeze:** To secure the payment of this loan and all expenditures incurred by the Credit Union in connection with this loan: **(a) You grant the Credit Union a security interest** in the property described on Page 1 of this document ("Collateral"). The security interest includes all increases, substitutions and additions to the secured property, proceeds from any insurance on the secured property and all earnings received from the secured property. The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the loan or any extensions, renewals or refinancing of the loan. If the value of the property declines, you promise to give us more security if asked to do so. You also agree to abide by the terms of the Security Agreement. **(b) YOU GRANT AND PLEDGE TO US A CONSENSUAL LIEN ON ALL SUMS ON DEPOSIT** to secure your obligations to the credit union pursuant to applicable state law. "All sums on deposit" and "shares" for purposes of this pledge means all deposits in any share savings, share draft, club, certificate, P.O.D., revocable trust or custodial accounts(s), whether jointly or individually held, that we have on deposit now or in the future, all of which are deemed "general deposits" for the purpose of this pledge. Your pledge does not include any IRA, Keogh, tax escrow, irrevocable trust or fiduciary account in which you do not have vested ownership interest. **(c) You acknowledge and agree to impressment of the Credit Union's statutory lien rights** under the Federal Credit Union Act and/or applicable state law as of the date of your loan, which gives us the right to apply the sums in your account(s), to satisfy any obligations you owe to the credit union, regardless of contributions at the time of default, and without further notice to you or any owner of the account(s). **(d) You acknowledge and agree to our "common law" right to set off** under applicable state law which authorizes us to apply the funds in any joint or individual account to any obligations owed to us if you default or fail to pay or satisfy any obligation to us without any legal process, court proceeding or any notice to any owner of the account(s) affected hereunder or otherwise under this Agreement. **(e) You specifically agree that we have a right to place an administrative freeze on any of your joint or individual account(s) and that such action shall not violate 11 USC 362 or other applicable law.** IF YOU HAVE A CREDIT CARD WITH US, OUR RIGHTS ALSO APPLY TO THAT CREDIT CARD ACCOUNT.

**Multiple Rights; Cumulative Remedies:** You understand and agree that the Credit Union has multiple rights as enumerated above and that the remedies are cumulative. Nothing herein shall limit or restrict the remedies available to us following any event of default under the terms of your loan documents.

**Cross-collateralization:** Property given as security for this loan or for any other loan Borrower has with the credit union will secure all amounts Borrower owes the credit union now and in the future. However, property securing another debt will not secure this loan if such property is Borrower's principal residence (unless the proper rescission notices are given and any other legal requirements are satisfied), or are non-purchase money household goods. IF YOU HAVE A CREDIT CARD WITH US, THIS CROSS-COLLATERALIZATION CLAUSE ALSO APPLIES TO THAT CREDIT CARD.

**Release of Lien:** We will not release any lien on any collateral under this Note if you are delinquent on, or in default on, any other loan you have with us. For example, if you are in default on a line of credit, we will not release our lien on a vehicle loan, even if the vehicle loan is current or paid in full.

**Transfer of Collateral:** You will not change the location of, sell or transfer the collateral unless you have our prior written consent.

**Good Title:** You warrant that you have good title to the collateral, free of all security interests except that given to the credit union and except for any interest of a non-co-maker owner of the collateral who has signed the agreement in the indicated place.

**Maintenance of Collateral:** You will pay all taxes, assessments, and liens against or attached to the property described and further agree to keep the property in good condition, housed in a suitable shelter. You agree to execute financing statements and security agreement amendments at our request and will defend the property against adverse third party claims.

**Additional Security:** Should we feel at any time that the security presented has diminished in value, or for any reason feel that additional security is required, you agree to assign to us within ten (10) days whatever additional security we feel is necessary to protect us against possible loss.

**Actions Upon Default:** If a default as defined in the Loan Agreement should occur, we, or a third party designated by us, have the authority, upon such default, to repossess and sell the collateral in a lawful manner. This includes authority to take possession of any personal property contained in the collateral. In such cases, we or our authorized representatives may, at our option, enter the premises where the collateral is kept and take possession, subject to applicable laws. We have the right to render the property pledged as collateral unusable and may dispose of the collateral on the premises where the collateral is kept. If we decide to sell the collateral at a public sale, private sale or otherwise dispose of the collateral, we will provide reasonable notice if required by law and will otherwise comply with applicable state law. If we sell or otherwise dispose of the collateral we may collect from you reasonable expenses incurred in the retaking, holding and preparing the collateral for and arranging the sale of the collateral, subject to applicable law, as well as any deficiency balance if allowed under applicable law. We may also collect reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the property. Unless you default, you may keep possession of the property (collateral) described and use it in any lawful manner consistent with this agreement or with the insurance policy on the collateral. You understand that we have certain rights and legal remedies available to us under the Uniform Commercial Code and other applicable laws, and that we may use these rights to enforce payment if you default. In the event of default, you will at our request assemble the property (collateral) and make it available to us at a place of our choosing. If we decide to waive this default, it will not constitute waiver of any other subsequent defaults.

**Attorney-in-Fact:** We are hereby appointed as your Attorney-in-Fact to perform any acts which we reasonably feel are necessary to protect the collateral and the security interest which this agreement creates.

**Joint Borrowers:** If there is more than one borrower, your obligations under this agreement are joint and several, each being equally responsible to fulfill the terms of this agreement.

**Others Bound:** This security agreement not only binds you, but your executors, administrators, heirs, and assigns.

**Further Assurances:** You agree to execute any further documents, and to take any further actions, reasonably requested by Credit Union in order to evidence or perfect the security interests granted herein or to effectuate the rights granted to Credit Union.

**Governing Law:** This Security Agreement is being executed and delivered in, and is intended to be performed in, the State of Texas and shall be construed and enforced in accordance with the laws of the State of Texas, except to the extent that the Uniform Commercial Code provides for the application of the law of another state.

**Additional Advances:** Any additional advances made by us for the payment of taxes or assessments or liens of any kind, or premiums on insurance and the interest owing thereon or any other advance necessary to perfect or protect our security interest shall also be secured by this agreement. Such amounts shall be added to your loan balance and your minimum payment due shall be increased or your loan term extended accordingly.

Case 24-14494-amc    Doc 16    Filed 03/11/25    Entered 03/11/25 11:55:51    Desc Main
Document    Page 16 of 16

| BORROWER'S NAME | | APPLICATION NUMBER | DATE OF LOAN |
| --- | --- | --- | --- |
| JORDAN ROY PEARCE | | ▮ | 5/6/2021 |

IN THESE AGREEMENTS, THE WORDS "YOU," "YOUR" AND "YOURS" MEAN ALL THOSE NAMED AS BORROWERS. THE WORDS "WE," "US" AND "OUR" MEAN THE CREDIT UNION.

*Applies to Louisiana residents only:*

## Louisiana law permits repossession of motor vehicles upon default without further notice or judicial process.

If the secured collateral is a motor vehicle and you are in default, we may seize and sell the motor vehicle without demand for payment or advance notice to you. Collateral other than motor vehicles may be repossessed without judicial process only as allowed by applicable Louisiana law.

For purposes of foreclosure under Louisiana executory process, **you hereby confess judgment in our favor for all amounts secured by the Note**, including, but not limited to, principal, interest, late charges, costs of collection, costs of preservation of the collateral, reasonable attorney's fees, and all other amounts under the Note. We may appoint a keeper of the property in the event of foreclosure. To the extent allowed under Louisiana law, you hereby waive the following rights and procedures under Louisiana law: (a) all rights and benefit of appraisal; (b) notice of seizure; (c) the 3-day delay afforded under Articles 2331 and 2722; and (d) all other provisions under Articles 2331, 2722 and 2723 and all other Articles not specifically mentioned herein. You further agree that any declaration of fact made by authentic act by a person declaring that such facts are within his or her knowledge shall constitute authentic evidence of facts for the purposes of foreclosure under applicable Louisiana law and for the purposes of LSA-R.S. 9:3504(D)(6) and LSA-R.S. 10:9-508, to the extent applicable.

**PROPERTY INSURANCE; LENDER-PLACED INSURANCE - PLEASE READ CAREFULLY**

(a) <u>Your requirement to maintain property insurance</u>. You are required to carry insurance to protect your interest and our interest in the collateral securing this loan. The insurance:

- Must protect against any loss by fire or theft, and collision and comprehensive coverage on motor vehicles and other property pledged as security on this Loan.
- Must (i) be in an amount and type sufficient to repair the collateral to its existing condition prior to the loss, and/or to replace the collateral with comparable or like property, minus depreciation, if it is damaged or lost; or (ii) be in an amount and type as we might otherwise inform you that we require.
- Must have a maximum deductible of $1,000.00.
- Must be maintained in force for as long as the loan is outstanding.
- Must name us as loss payee. We must receive the loss payee endorsement within 30 days of your loan date.

These requirements are solely in our discretion and we may change any of these requirements at any time for any reason. The insurance may be obtained by any insurer of your choice that is acceptable to us.

(b) <u>Lender-placed property insurance</u>. Please read carefully:

- **If you fail to maintain insurance satisfying the requirements set forth above, or if you fail to provide us proof of such coverage, we may, but do not have to, obtain insurance to protect our interest (not yours) in the property.**
- **The total cost of lender-placed insurance will be added to the loan balance.** The total cost of this insurance includes, but is not limited to, the premium, any administrative costs we incur, any commissions that may be earned, and other reasonable expenses related to your failure to maintain insurance. This cost will be paid by you either on demand, or by increasing your periodic payment, or by extending the loan term.
- Whether we obtain insurance, and the amount and types of coverage that we may obtain, is solely in our discretion. We may obtain this insurance from anyone we want, including an affiliate of ours, and such affiliate may earn a commission on the coverage.
- **The insurance placed by us is without benefit to you personally**, and is primarily for our protection. It may not adequately protect your interest in the collateral or any personal property contained in the collateral, and will not satisfy any mandatory liability or financial responsibility requirements under state law.
- **Coverage obtained by us may be considerably more expensive than coverage you could obtain on your own** and may be different than previous policies you may have had or policies that you may prefer.
- Any insurance placed by us will be effective as of the date your policy lapsed or, if you never obtained insurance, the date of the loan.
- Nothing in this agreement is intended to confer third-party beneficiary rights or status to you with respect to any agreements between us and our insurer or its agent.

(c) <u>How to remove lender-placed property insurance</u>. **You may have the lender-placed coverage cancelled at any time by providing evidence to us that you have purchased insurance coverage satisfying the requirements set forth above.** If you do so, you will receive a refund of any unearned premiums and finance charges on the lender-placed coverages and your loan balance will be adjusted accordingly.

(d) <u>Other</u>. You assign us the right to receive and endorse any insurance proceeds check, to apply those proceeds to the sums you owe, and you direct any insurer to pay those proceeds directly to us. You further authorize us or our representative to obtain the necessary information for verification of adequate coverage. We, or our affiliates, may receive compensation or reimbursement of expenses related to any insurance premiums added by us.

(e) <u>Default</u>. If you fail to maintain insurance as set forth above, you will be in default of your loan. We may either place our own insurance on the collateral as explained above, or we can declare you in default and take all remedies set forth in your loan or security agreement or available to us under applicable law, including calling the loan immediately due.

6110 2-2018